


IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TERESA MAGUIRE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| vs. | ) |
| | ) FILE No. 5:19-cv-258-OLG |
| C-STORE OF USA, INC., | ) |
| | ) |
| Defendants. | ) |

### JOINT MOTIN TO APPROVE CONSENT DECREE AND TO DISMISS DEFENDANTS WITH PREJUDICE

Plaintiff, Teresa Maguire ("Plaintiff") and Defendant, C-Store of USA, Inc. ("Defendant") (collectively, the "Parties"), hereby consent to Plaintiff's counsel filing the within Joint Motion to Approve of the parties' Consent Decree and to Dismiss Defendant, C-Store of USA, Inc. with Prejudice:

1. Plaintiff filed the instant cause of action alleging that the Property operated and/or owned by Defendant violated Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

2. The matters raised by Plaintiff's Complaint have been resolved in accordance with the Consent Decree ("Settlement") attached hereto as Exhibit "1".

3. In accordance therewith, the Parties request that the Court review, approve and ratify the Consent Decree. Additionally, the Parties request the Court retain jurisdiction to enforce the terms of the Settlement. This Settlement is conditioned upon the Court's retaining jurisdiction to enforce said Settlement.

4.  As part of the Settlement reached between the Parties, Plaintiff has agreed to dismiss Defendant, C-Store of USA, Inc. with prejudice. Accordingly, the Parties request, upon the Court's review, approval and ratification of the Settlement, Defendant, C-Store of USA, Inc. be dismissed with prejudice.

5.  Except as otherwise stated in the Settlement, each party to bear their own fees and costs.

WHEREFORE, the Parties respectfully request that this Honorable Court enter an Order approving the attached Consent Decree, dismissing the claims asserted by Plaintiff against Defendant, C-STORE OF USA, INC., with prejudice, and retaining jurisdiction to enforce the Settlement.

Respectfully submitted this 16th day of March, 2020.

Respectfully submitted,

/s/ Dennis R. Kurz
Dennis R. Kurz
*Attorney-in-Charge for Plaintiff*
Texas State Bar ID No. 24068183
Kurz Law Group, LLC
4355 Cobb Parkway, Suite J-285
Atlanta, GA 30339
Tele: (404) 805-2494
Fax: (770) 428-5356
dennis@kurzlawgroup.com

# EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TERESA MAGUIRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| vs. ) | |
| ) | FILE No. 5:19-cv-258-OLG |
| C-STORE of USA, INC., ) | |
| ) | |
| Defendant. ) | |

## CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between Teresa Maguire referred to in this Agreement as ("Plaintiff") and C-Store of USA, Inc. ("Defendant"). The signatories to this Agreement will be referred to jointly as the "Parties." This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

## Preamble

**WHEREAS**, on or about March 15, 2019, Plaintiff filed an action in the United States District Court for the Western District of Texas, entitled *Teresa Maguire v. Alex Mui and C-Store of USA, Inc.*, Case No: 5:19-cv-258-OLG (the "Action"),[1] wherein Plaintiff asserted claims for injunctive relief against Defendants based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq.* ("ADA") and related claims for relief respecting the real property located at or about 3909 Fredericksburg Road, San Antonio, TX 78201, Bexar County Property Appraiser's Parcel ID: 452100 (the "Facility"):

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation;

**WHEREAS**, the Parties have agreed to enter into this Agreement pursuant

---

[1] Please note that during the pendency of the within litigation, the Plaintiff settled with and dismissed the Mui Defendant on or about August 26, 2019, and continued to pursue to the C-Store of USA, Inc. Defendant for the balance of the improvements sought on the subject Property. Thus, this Consent Decree shall pertain exclusively the remaining parties in this Action.

1

to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendant shall be fully, forever, and finally released; and

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

## 1.   Attorney's Fees and Costs

1.1   Plaintiff and Defendant shall execute this Agreement and Plaintiff's counsel, Dennis R. Kurz, Esq., KURZ LAW GROUP, LLC, 4355 Cobb Parkway, Suite J-285, Atlanta, GA 30339. Plaintiff's Counsel shall prepare a Joint Stipulation to Approve Consent Decree and Dismissal of Defendant with Prejudice to be distributed to all Parties for execution. Defendant agrees to pay a total settlement amount of **$3,600.00** comprising of attorney's fees and costs of $3,300.00 and a reinspection fee of $300.00 (the "Settlement Payment"). All payments shall be made payable to "**Kurz Law Group, LLC**," with an indication that the check is issued "in settlement of Case No. 5:19-cv-258-OLG.

1.2   Upon delivery to Plaintiff's Counsel of the fully executed Agreement and payment due with the executed Agreement referenced in 1.1 above Plaintiff shall promptly file the Joint Stipulation to Approve Consent Decree and Dismissal of Defendant with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

1.3   Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of his or its own litigation expenses, costs and attorneys' fees.

1.4   Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendant has not made any representations regarding the tax consequences of any Payment received pursuant to this Agreement.

1.5   The Parties agree that a condition precedent for the validity of this Agreement is the Court's retaining jurisdiction to enforce the Agreement.

## 2.     Alterations or Modifications to the Facilities

2.1     The Parties hereto acknowledge and stipulate that Defendant shall modify or alter the items expressly identified by and in the manner specified in Exhibit "A." The repairs or modifications identified in Exhibit "A" shall be completed in all respects no later than twelve (12) months from the effective date of the execution of this Agreement, which shall be the date indicated by the last signatory to the Agreement. The time period for Completion by Defendant shall be subject to acts of God, force majeure, or events beyond the control of Defendant, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in Exhibit "A" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendant provides notice to Plaintiff's Counsel prior to the original completion date set forth above.

2.2     Upon completion of the removal of the barriers and the alterations and modifications set forth in Exhibit "A", Defendant shall provide written notice by certified or registered mail or via e-mail to Plaintiff's Counsel.

2.3     Right to Inspection: The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in Exhibit "A" or after the elapse of the twelve (12) month time period set forth in Section 2.1 above, whichever is sooner, Plaintiff may inspect the Facility to ensure that Defendant has completed the repairs or modifications described in Exhibit "A." Defendant shall provide Plaintiff or their representative reasonable access to the Facility to verify completion of the work described in Exhibit "A."

2.4     If an inspection contemplated herein reveals that any of the alterations or modifications described in Exhibit "A" have not been performed in a manner that does not materially comply with Exhibit "A." Plaintiff shall have the right to enforce this Agreement pursuant to Section 3.1.

2.5     It is agreed by all parties that if and upon all of the above modifications being completed as set forth in Exhibit "A," the Facility will be fully compliant with the ADA pursuant to the readily achievable standard.

## 3. Enforcement Provisions

3.1   In the event the alterations and modifications described in Exhibit "A" are not completed in the manner and time frame set forth in this Agreement, Plaintiff shall be entitled to file an action to obtain specific performance against Defendant or otherwise enforce the requirements of this Agreement. In any action to enforce this Agreement, the parties agree Defendant's failure to timely modify the property pursuant to Section 2.1 above is a material breach of the Agreement.

## 4. Compromise

4.1   The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in Section 5.1 below). The Released Parties expressly deny any such liability, wrongdoing, or responsibility.

## 5. Mutual Release

5.1   In exchange for the good and valuable consideration set forth herein the sufficiency of which is hereby acknowledged, the Parties hereto mutually release each other, or through their corporate capacity, agents, employees, family members, partners, successors, assigns, and heirs, along with anyone claiming by or through them, jointly and severally (collectively the "Releasing Parties") hereby release, acquit, satisfy and discharge the other, and along with any and all of their predecessors, agents, employees, assigns, heirs, officers, directors, shareholders, members, affiliated entities, and any entity or person related to them, jointly and severally, (hereinafter the "Released Parties") from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action or suits of any kind which the Releasing Parties may have, may have had, or may hereafter raise against the Released Parties, including but not limited to this subject litigation arising under Title III of the ADA including all claims by the Releasing Parties for attorneys' fees and costs, expert fees, litigation expenses, or any other amount, fee, and/or cost, with the exception of the attorneys' fees and costs required to be paid by the Defendant pursuant to Paragraph 1 of this Agreement and any attorney's fees and costs incurred in the any future enforcement of this Agreement. This Release is strictly limited to the Facility.

5.2   As a material inducement for Defendant to enter into this Agreement, Plaintiff represents and warrants that he is not aware of any pending tort, contract, or other legal claims against Defendant, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

5.3   Plaintiff represents and warrants that no portion of any of the matters

4

released by this Agreement and no portion of any recovery or settlement to which they might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

## 6. Notice

6.1   Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

Defendant:
**C-STORE of USA, INC.**
c/o Simon Tan , Esq.
Texas State Bar No. 00797535
SON & TAN, LLP
7005 Chase Oaks Boulevard
Suite 180
Plano, Texas 75025
(972) 808-9888 Phone
(972) 808-9688 Facsimile
simontan@sontanlaw.com

To Plaintiff:
**TERESA MAGUIRE**
c/o Dennis R. Kurz, Esq.
Texas State Bar No. 24068183
KURZ LAW GROUP, LLC
4355 Cobb Parkway, Suite J-285
Atlanta, GA 30339
(404) 805-2494 Phone
dennis@kurzlawgroup.com

6.2   A Party may change such address for the purpose of this paragraph by giving timely written notice of such change to all other Parties to this Agreement in the manner provided in this paragraph.

## 7. Free Will

7.1   The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. In

addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

## 8. <u>Miscellaneous Terms and Conditions</u>

8.1    This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein.

8.2    This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

8.3    This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

8.4    This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

8.5    If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

8.6    The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7    Plaintiff represents that, other than the Action, he has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendant with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on his behalf, he or it will use his or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

8.8    The parties and their Counsel agree to execute any and all further

documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

8.9     In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

8.10     The Parties agree that any ambiguities in this Agreement shall not be construed against the drafter of the Agreement.

8.11     The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding paragraph 1 are incorporated as a material part of this Agreement.

8.12     This Agreement is entered into in, and shall be governed by and construed and interpreted in accordance with the substantive laws of the State of Texas.

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

DATED: February 28, 2020     _____
**Teresa Maguire**

DATED: February 28, 2020     _____
For: **C-Store of USA, Inc.**
By:     Saleem Rajani
Title:     Vice President

7

## EXHIBIT A

For purposes of this Agreement, "2010 ADAAG standards" refers to the ADA Accessibility Guidelines 28 C.F.R. Pt. 36, App. A.

The following modifications are to be made by Defendant C-Store of USA, Inc.:



TYP. ACCESSIBLE PARKING/AISLE
SCALE: 1/4" = 1'-0"





**Figure 504.5 Stair Nosings**

**504.6 Handrails.** Stairs shall have handrails complying with 505.

**504.7 Wet Conditions.** Stair treads and landings subject to wet conditions shall be designed to prevent the accumulation of water.

## 505 Handrails

**505.1 General.** Handrails provided along walking surfaces complying with 403, required at ramps complying with 405, and required at stairs complying with 504 shall comply with 505.

> **Advisory 505.1 General.** Handrails are required on ramp runs with a rise greater than 6 inches (150 mm) (see 405.8) and on certain stairways (see 504). Handrails are not required on walking surfaces with running slopes less than 1:20. However, handrails are required to comply with 505 when they are provided on walking surfaces with running slopes less than 1:20 (see 403.6). Sections 505.2, 505.3, and 505.10 do not apply to handrails provided on walking surfaces with running slopes less than 1:20 as these sections only reference requirements for ramps and stairs.

**505.2 Where Required.** Handrails shall be provided on both sides of stairs and ramps.

> **EXCEPTION:** In assembly areas, handrails shall not be required on both sides of aisle ramps where a handrail is provided at either side or within the aisle width.

**505.3 Continuity.** Handrails shall be continuous within the full length of each stair flight or ramp run. Inside handrails on switchback or dogleg stairs and ramps shall be continuous between flights or runs.

> **EXCEPTION:** In assembly areas, handrails on ramps shall not be required to be continuous in aisles serving seating.

**505.4 Height.** Top of gripping surfaces of handrails shall be 34 inches (865 mm) minimum and 38 inches (965 mm) maximum vertically above walking surfaces, stair nosings, and ramp surfaces. Handrails shall be at a consistent height above walking surfaces, stair nosings, and ramp surfaces.

> **Advisory 505.4 Height.** The requirements for stair and ramp handrails in this document are for adults. When children are the principal users in a building or facility (e.g., elementary schools), a second set of handrails at an appropriate height can assist them and aid in preventing accidents. A maximum height of 28 inches (710 mm) measured to the top of the gripping surface from the ramp surface or stair nosing is recommended for handrails designed for children. Sufficient vertical clearance between upper and lower handrails, 9 inches (230 mm) minimum, should be provided to help prevent entrapment.



Figure 505.4 Handrail Height

**505.5 Clearance.** Clearance between handrail gripping surfaces and adjacent surfaces shall be 1 1/2 inches (38 mm) minimum.



Figure 505.5 Handrail Clearance

**505.6 Gripping Surface.** Handrail gripping surfaces shall be continuous along their length and shall not be obstructed along their tops or sides. The bottoms of handrail gripping surfaces shall not be obstructed for more than 20 percent of their length. Where provided, horizontal projections shall occur 1 1/2 inches (38 mm) minimum below the bottom of the handrail gripping surface.

**EXCEPTIONS:**
**1.** Where handrails are provided along walking surfaces with slopes not steeper than 1:20, the bottoms of handrail gripping surfaces shall be permitted to be obstructed along their entire length where they are integral to crash rails or bumper guards.
**2.** The distance between horizontal projections and the bottom of the gripping surface shall be permitted to be reduced by 1/8 inch (3.2 mm) for each 1/2 inch (13 mm) of additional handrail perimeter dimension that exceeds 4 inches (100 mm).

> **Advisory 505.6 Gripping Surface.** People with disabilities, older people, and others benefit from continuous gripping surfaces that permit users to reach the fingers outward or downward to grasp the handrail, particularly as the user senses a loss of equilibrium or begins to fall.



**Figure 505.6 Horizontal Projections Below Gripping Surface**

**505.7 Cross Section.** Handrail gripping surfaces shall have a cross section complying with 505.7.1 or 505.7.2.

**505.7.1 Circular Cross Section.** Handrail gripping surfaces with a circular cross section shall have an outside diameter of 1 1/4 inches (32 mm) minimum and 2 inches (51 mm) maximum.

**505.7.2 Non-Circular Cross Sections.** Handrail gripping surfaces with a non-circular cross section shall have a perimeter dimension of 4 inches (100 mm) minimum and 6 1/4 inches (160 mm) maximum, and a cross-section dimension of 2 1/4 inches (57 mm) maximum.



**Figure 505.7.2 Handrail Non-Circular Cross Section**

**505.8 Surfaces.** Handrail gripping surfaces and any surfaces adjacent to them shall be free of sharp or abrasive elements and shall have rounded edges.

**505.9 Fittings.** Handrails shall not rotate within their fittings.

**505.10 Handrail Extensions.** Handrail gripping surfaces shall extend beyond and in the same direction of stair flights and ramp runs in accordance with 505.10.

**EXCEPTIONS:**
1. Extensions shall not be required for continuous handrails at the inside turn of switchback or dogleg stairs and ramps.

**2.** In assembly areas, extensions shall not be required for ramp handrails in aisles serving seating where the handrails are discontinuous to provide access to seating and to permit crossovers within aisles.

**3.** In alterations, full extensions of handrails shall not be required where such extensions would be hazardous due to plan configuration.

**505.10.1 Top and Bottom Extension at Ramps.** Ramp handrails shall extend horizontally above the landing for 12 inches (305 mm) minimum beyond the top and bottom of ramp runs. Extensions shall return to a wall, guard, or the landing surface, or shall be continuous to the handrail of an adjacent ramp run.



**Figure 505.10.1 Top and Bottom Handrail Extension at Ramps**

**505.10.2 Top Extension at Stairs.** At the top of a stair flight, handrails shall extend horizontally above the landing for 12 inches (305 mm) minimum beginning directly above the first riser nosing. Extensions shall return to a wall, guard, or the landing surface, or shall be continuous to the handrail of an adjacent stair flight.



**Figure 505.10.2 Top Handrail Extension at Stairs**

**505.10.3 Bottom Extension at Stairs.** At the bottom of a stair flight, handrails shall extend at the slope of the stair flight for a horizontal distance at least equal to one tread depth beyond the last riser nosing. Extension shall return to a wall, guard, or the landing surface, or shall be continuous to the handrail of an adjacent stair flight.



Note: X = tread depth

**Figure 505.10.3 Bottom Handrail Extension at Stairs**

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY, a true and correct copy of the above and foregoing has been filed electronically the Clerk of the Court using CM/ECF/system on this 10th day of March, 2020.

>Simon Tan
>*Attorney-in-Charge for Defendant*
>SON & TAN, LLP
>7005 Chase Oaks Boulevard
>Suite 180
>Plano, Texas 75025
>simontan@sontanlaw.com

>/s/ Dennis R. Kurz
>Dennis R. Kurz